THE STATE EX REL. RIZER, APPELLEE, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. Rizer v. Indus. Comm.* (2000), 88 Ohio St.3d 1.]

(No. 98–697—Submitted October 12, 1999—Decided February 9, 2000.)

*Betty D. Montgomery,* Attorney General, and *Gerald H. Waterman,* Assistant Attorney General, for appellant Industrial Commission.

*Thompson, Hine & Flory, L.L.P.,* and *J. Kent Breslin,* for appellant Phoenix Products, Inc.

---

***Per Curiam.*** This cause presents four questions for our review. First, should Rizer be denied W/L from March 2, 1994 until May 8, 1994, for the reason that this period precedes her amended application by more than two years? Second, should Rizer be denied W/L from May 9, 1994 through August 31, 1994, for the reason that she had no medical restrictions preventing her from working full-time? Third, did Rizer qualify for W/L while she was working part-time work at the Riser Foods grocery? And fourth, should Rizer be denied W/L from December 18, 1995 until June 6, 1996, because she quit her job at the grocery and then did not seek full-time work in good faith?

For the reasons that follow, we hold that (1) R.C. 4123.52 does not limit Rizer's relief just because she moved to amend her application for compensation, (2) W/L is possible from May 9, 1994 through August 31, 1994, because Rizer had restrictions effectively preventing her employment as an assembler, and she professed to a good-faith search for full-time work, (3) Rizer is not entitled to W/L from September 1, 1994 until December 17, 1995, because she had no restrictions against full-time work other than those involving repetitive hand movement, and (4) W/L is possible from December 18, 1995 until June 6, 1996, because, as the court of appeals found, Rizer's testimony on this issue suggested that she was looking, to some degree, for full-time work. Accordingly, we affirm in part and reverse in part.

4

R.C. 4123.52 provides:

"[T]he commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor."

The court of appeals decided that R.C. 4123.52 did not preclude the "relation back" of Rizer's May 9, 1996 amendment to her original August 25, 1995 W/L application, such that the two-year period extended back to August 25, 1993 and, thus, included her amended request for W/L as of March 2, 1994. We agree with this result, but not with the court of appeals' reasoning.

By analogizing to *Dent v. AT&T Technologies, Inc.* (1988), 38 Ohio St.3d 187, 189, 527 N.E.2d 821, 824, the court of appeals concluded that Phoenix had sufficient notice to be held accountable for the earlier W/L. But the analogy does not work. *Dent* held that the commission can exercise R.C. 4123.52 continuing jurisdiction over additional conditions induced by industrial injuries only if the claimant gives notice, pursuant to R.C. 4123.84(A), of the injured body part within two years of injury or death[2]; however, neither an additional condition nor an industrial injury is involved in this case. Rather, the occupational disease disability at stake here is governed by R.C. 4123.85, which bars occupational disease claims unless they are filed within two years of the date the disability began, or such longer period as does not exceed six months after the disease is diagnosed or within two years of the claimant's death. R.C. 4123.85 simply does not impose notice requirements similar to those in R.C. 4123.84. R.C. 4123.85 governs *only* the time for filing an application for occupational disease compensation; whether the application gives notice to the employer is irrelevant.

Furthermore, no analogy is required to resolve this issue. In limiting claimants to compensation awards to the two years before the "application therefor," R.C. 4123.52 obviously does not impose a new two-year limitation every time a claimant attempts to amend an application for compensation. The "application therefor" refers to whatever application initiates the particular proceeding that generates either an agency "finding" or "award" or that "modif[ies]" or "change[s]" an administrative order within the meaning of R.C. 4123.52. Rizer applied for a finding that she was entitled to a W/L award, and then she moved to change the substance of her application. She did not move for modification or change of a commission or BWC order. Thus, the "application therefor" must be

---

2. In clarifying the notice requirements under R.C. 4123.84(A), *Dent* particularly established that specific notice of the claimant's medical condition itself was not necessary for continuing jurisdiction. *Id.*, 38 Ohio St.3d at 189, 527 N.E.2d at 824.

her initial application for W/L and not any subsequent revision to that application.

For this reason, Rizer's W/L award cannot be limited to the two years before she amended her application. Accordingly, we affirm the court of appeals that Rizer could qualify for W/L as early as March 2, 1994.

*W/L for May 9, 1994 to August 31, 1994*

To qualify for wage-loss compensation under R.C. 4123.56(B) and corresponding former Ohio Adm.Code 4121-3-32(D), "a claimant must * * * show that he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury." *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 215, 648 N.E.2d 827, 832. Stated differently, "a medical inability to secure comparably paying work is a prerequisite for wage loss eligibility." *State ex rel. Frederick v. Licking Cty. Dept. of Human Serv.* (1998), 82 Ohio St.3d 227, 230, 694 N.E.2d 1350, 1352; *State ex rel. Williams–Laker v. Indus. Comm.* (1998), 80 Ohio St.3d 694, 697, 687 N.E.2d 1379, 1382. Thus, again contrary to the court of appeals' reasoning, Phoenix's notice of Rizer's allowed condition is not the standard against which Rizer's entitlement must be judged. Rather, Rizer had to prove that her condition prevented her continued employment at Phoenix and made it impossible for her to secure other comparably paying work.

The magistrate correctly realized that Rizer's doctor had restricted her from continuing in her "current type of job" due to the required hand movement and that she was terminated when Phoenix could not otherwise accommodate her condition. In fact, the record contains a letter from Phoenix's president admitting, in effect, that Rizer was terminated due to the restricted use of her hands. Indeed, none of the parties now disputes that Rizer's carpal tunnel caused her discharge from Phoenix.

But since the commission initially found no medical restriction, it did not reach the issue of Rizer's good-faith job search. *Pepsi–Cola Bottling, supra,* 72 Ohio St.3d at 216, 648 N.E.2d at 832 (Since W/L is not a subsidy allowing claimant to work part-time when full-time work is available, quality of job search is at issue). The magistrate thus properly recommended a limited writ to return this cause to the commission for that determination. We therefore affirm the court of appeals' judgment to this effect.

*W/L for September 1, 1994 to December 17, 1995*

Former Ohio Adm.Code 4121-3-32(D)(1) and (3) established the two circumstances under which Rizer could qualify for W/L—either she got a new, lower-paying job because her allowed condition prevented her from doing her old,

higher-paying job, or she could not find any job because of her allowed condition. 1987–1988 Ohio Monthly Record 64. Critical to each is a showing that Rizer's bilateral carpal tunnel syndrome, not any lack of interest or industriousness, caused her inability to secure comparably paying work. *Pepsi–Cola Bottling, supra.* For this reason, the quality of Rizer's job searches and her acceptance of part-time work, as compared to traditional full-time work, is subject to scrutiny. *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland* (1999), 84 Ohio St.3d 405, 406–407, 704 N.E.2d 570, 571.

Rizer's doctor reported that at no time while she was working as a part-time cashier was she restricted from full-time work not requiring repetitive hand movement. Notwithstanding this, Rizer's job search records show that she stopped searching for work completely after she became a cashier on September 1 until she quit on December 17, 1995.

The court of appeals overlooked this evidence when it found that Rizer could possibly qualify for W/L during this period. But a claimant is not entitled to W/L after she voluntarily removes herself from the full-time labor market and becomes satisfied with part-time work. *State ex rel. Reamer v. Indus. Comm.* (1997), 77 Ohio St.3d 450, 452, 674 N.E.2d 1384, 1385. Moreover, the commission does not abuse its discretion as long as "some evidence" supports its conclusion. *State ex rel. Dibble v. Presrite Corp.* (1999), 85 Ohio St.3d 275, 707 N.E.2d 928. The court of appeals' judgment to the contrary, therefore, is reversed.

### *W/L for December 18, 1995 to June 6, 1996*

The commission and magistrate refused W/L for this period based mainly on Rizer's testimony at the DHO hearing. But as the court of appeals found, Rizer never admitted to not looking for full-time work. Rather, when asked whether she was "currently looking for full-time employment within [her] restriction," Rizer replied, "Yes, I am." It was only when asked if she had, in effect, any *other* evidence of this that she conceded that she did not.

Moreover, although Rizer's job search log forms were not signed, they reflect job inquiries during January 1996 through April 1996, the months preceding her May 1996 hire at the collection agency. And according to her testimony, Rizer began working part-time at the collection agency because she "needed the job now, and there [was] opportunity for full-time [work] in a higher position, or there [was] a chance to move up." Thus, contrary to the commission's and magistrate's decisions, all the evidence relative to this W/L period suggests a job search, even though it does not establish the quality of that search. Accordingly, we also affirm the court of appeals' decision to return this issue to the commission for this determination.

Based on the foregoing, the court of appeals' judgment with respect to Rizer's first, second, and fourth alleged W/L loss periods is affirmed, and the cause is returned to the commission for further review. The court of appeals' judgment for the third period is reversed, and W/L is denied.

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents and would affirm the judgment of the court of appeals.