THE STATE EX REL. SMEGAL, APPELLEE, *v.* INDUSTRIAL COMMISSION, APPELLANT, ET AL.

[Cite as *State ex rel. Smegal v. Indus. Comm.* (2000), 90 Ohio St.3d 264.]

(No. 99–853—Submitted October 11, 2000—Decided November 8, 2000.)

266

*Weiner, Suit & Coury* and *Paul W. Newendorp;* and *Joseph C. Mikolay,* for appellee Smegal.

*Betty D. Montgomery,* Attorney General, and *Craigg E. Gould,* Assistant Attorney General, for appellant.

*Jones, Davies & Funk, Glenn R. Jones* and *Mary Eileen Purcell,* for Key Corp.

---

**Per Curiam.** To qualify for wage-loss compensation under R.C. 4123.56(B), former Ohio Adm.Code 4121–1–3–32(D) (1987–88 OMR 64), and now Ohio Adm. Code 4125–1–01(D), a claimant must show that "he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury." *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 215, 648 N.E.2d 827, 832. And since it is the medical inability to secure comparably paying work that qualifies the claimant, *State ex rel. Frederick v. Licking Cty. Dept. of Human Serv.* (1998), 82 Ohio St.3d 227, 230, 694 N.E.2d 1350, 1352, wage-loss compensation must be denied where diminished wages result from a claimant's personal choice to work part-time. *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland* (1999), 84 Ohio St.3d 405, 704 N.E.2d 570. The commission thus properly examined the diligence of Smegal's job search.

But the main issue before us today is whether the court of appeals erred in terminating Smegal's wage-loss compensation as of July 18, 1997. The court of appeals found, in effect, that since Key Corp. is a self-insured employer and continued to pay wage-loss compensation until July 18, 1997, it effectively conceded Smegal's entitlement for this period and could not invoke the commission's jurisdiction to review it. We disagree.

R.C. 4123.52 grants the commission continuing jurisdiction, within certain time periods, to "make such modification or change with respect to former findings or orders * * * as, in its opinion is justified." In fact, the commission's jurisdiction to review whether Smegal had actually qualified for wage-loss compensation on a continuing basis is obvious from the DHO order that granted her this compensation. The order specified that payments were to continue "upon submission of proof of wage loss related to the conditions recognized in this claim."

To sustain the court of appeals' judgment, Smegal relies on *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d

138. *Baker* held that once a self-insured employer certifies a claim as "allowed," even if by mistake, that claim is conclusively allowed. Smegal seems to consider *Baker* analogous to this case, but we are not persuaded to fashion a similar rule for self-insured employers paying wage-loss compensation based on claimant representations of an adequate job search.

We recently discussed our reluctance to extend *Baker* in *State ex rel. Griffith v. Indus. Comm.* (1999), 87 Ohio St.3d 154, 718 N.E.2d 423. In *Griffith*, we refused to hold a self-insured employer accountable for medical costs attributable to a nonallowed condition just because the employer had paid them unknowingly. There, the claimant's doctor had initially assured the employer that her allowed knee condition required arthroscopic surgery; however, surgical records prepared after the procedure revealed that the surgery was necessitated by claimant's nonallowed arthritis. We could not justify saddling the employer with the costs of this surgery when the employer had paid them in reliance on claimant's medical representations.

This case presents the same concerns. If we were to hold claimants conclusively entitled to wage-loss compensation merely because the employer paid it pursuant to a commission order requiring payment upon the claimant's submission of proof, our decision would create an overwhelming burden on self-insurers and a windfall for claimants. Self-insured employers would be forced to police not only the diligence of a claimant's job search, but the truth of the claimant's representations on the subject, while unscrupulous claimants would be rewarded for misrepresenting their efforts if the self-insurer failed to root out the fraud.

We consider these effects untenable. Thus, we hold, consistent with the commission's and Key Corp.'s argument, that the commission had authority to terminate Smegal's wage-loss compensation on any date, whether before or after Key Corp.'s July 18, 1997 motion, as long as "some evidence" of record supported that she no longer qualified for compensation as of that date.

Accordingly, to the extent that it precluded the commission from terminating Smegal's wage-loss compensation at any time prior to Key Corp.'s July 18, 1997 motion, we reverse the court of appeals' judgment. However, we do not deny relief completely, because none of the parties has justified terminating Smegal's wage-loss compensation as of May 15, 1997 (per the commission order), or, for that matter, any other date of significance in this record. We, therefore, grant a limited writ and return this cause to the commission for further proceedings consistent with our opinion, including for the commission to specify the proper date for terminating Smegal's wage-loss compensation.

*Judgment reversed and modified*
*and limited writ granted.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK, J., dissents and would affirm the judgment of the court of appeals.